[Civ. No. 6283. First Appellate District, Division One.—May 29, 1928.]

JOSEPH GLUCKSTEIN, Respondent, *v.* MORRIS RAP-PAPORT, Appellant.

Isaac Pacht and Clore Warne for Appellant.

Haas & Dunnigan, H. E. Forster and J. Marion Wright for Respondent.

CAMPBELL, J., *pro tem.*—In this action plaintiff prayed judgment against defendants Morris Rappaport and Amelia Rappaport for money had and received in the sum of $12,500. By their answer defendants made specific denial of the allegations of the complaint and filed a cross-complaint for attorney's fees wherein it was sought to enforce the provisions of a certain lease alleged to be a part of the transaction and contract upon which the action was brought. Plaintiff filed appropriate answer thereto. Thereafter the action was dismissed as to the defendant Amelia Rappaport, and the jury before which the action was tried returned a verdict in favor of defendant Morris Rappaport, whereupon judgment on the verdict was entered. Subsequently upon due notice a motion for a new trial was granted by the court on the ground of insufficiency of the evidence to sustain the verdict, and from this order granting a new trial defendant Morris Rappaport has appealed.

The facts show that on February 6, 1924, appellant, being the owner of certain lots situated at Seventh Street and Ceres Avenue in the city of Los Angeles, intended to improve such lots by erecting thereon a hotel building, and entered into a lease agreement with respondent under the provisions of which appellant convenanted to cause to be erected and ready for occupancy by October.1, 1924, a building for hotel purposes of class A construction containing 83 rooms and to have such building erected according to plans submitted and approved before the execution of the lease and constituting part of the lease, it being further agreed that any changes in the plans or specifications should only be made upon the written consent of respondent as lessee. Under the terms of the lease respondent paid to appellant $12,500. The lease gave to respondent the right to assign the lease or sublet the premises to Japanese or other financially responsible people on payment to appellant of the sum of $200. On March 10, 1924, respondent sublet the entire premises to K. Fukuda and S. Miyoshi, Japanese, paying to appellant $200 for his consent to the making of the sublease. Notice was duly given to respondent and the sublessees that the building would be ready for occupancy on or about July 15, 1924, and subsequently a further notice was given that occupancy could be had on August 1, 1924.

On July 15, 1924, the Japanese lessees, after inspecting the building, became aware of the irregular shape of many of the rooms and sent to respondent a notice of rescission of the sublease, setting forth in such notice that the building was not built according to the plans and specifications agreed upon and left with Fukuda and Miyoshi upon which were set forth and delineated the shape of the building to be erected and setting forth the size and shape of the rooms in the hotel building, showing the rooms to be of certain designated size and showing all of the rooms to be rectangular in form, 38 of which could be occupied by two persons, yet that in the building as actually constructed there are only 26 of such rooms. Fukuda and Miyoshi in such notice offered to reconvey and assign back the lease and offered to return everything of value they had received in connection with the sublease and demanded the return of $3,500 paid thereon and the cancellation and return of a promissory note given by them for $2,000.

Respondent, who had been in New York since the early part of June, 1924, discovered on his return toward the end of July that the Japanese sublessees had rescinded the sublease on the ground that the building had not been erected according to the plans approved and on August 1, 1924, served on appellant a notice of rescission of the main lease setting forth the facts wherein the building was not constructed in accordance with the plans and specifications agreed upon, demanding repayment of $12,500 paid on entering into the lease agreement on February 6, 1924, and offering to return appellant everything of value received from him. On August 19, 1924, appellant entered into the premises and relet the same for the full term demised to respondent.

Three separate actions arose out of these facts. Respondant instituted the action which is the subject of this appeal; appellant brought an action against respondent, alleging that because of respondent's failure to take possession of the premises he had relet the same for the term demised to Max Kirschbaum; that by reason of certain expenses, counsel fees, etc., he has suffered damage, while Fukuda and Miyoshi brought suit against respondent seeking enforcement of the rescission of their sublease. The first two actions were by stipulation of the parties ordered consolidated and were

tried together. The jury rendered its verdict in each case for the defendant, and in each case a new trial was granted.

Appellant urges—"I. That in order to accomplish a rescission it was incumbent on respondent to first place appellant in *status quo* and deliver up to him everything of value received by him, or offer so to do. II. That respondent did not place nor offer to place appellant in *status quo*. III. That, therefore, no rescission accomplished, no judgment other than in favor of appellant could be rendered or given, and the trial court erred in granting motion for new trial."

The contention that respondent did not restore to appellant everything of value received or make an offer to do so is without merit. The sublease was rescinded by the undertenant on July 15, 1924, the rescission itself being based on the same failure of consideration relied on by respondent in his notice of rescission given on a subsequent date. The act of rescission by the subtenants is deemed to take effect as of the date of the rescission, to wit, July 15, 1924, and this must be so irrespective of the fact that the Japanese sublessees later commenced an action to have the court declare the sublease canceled as any judgment of the court confirming the rescission of the sublease must have declared the rights terminated under the sublease as of the date of rescission. (*Wilcox* v. *Lattin*, 93 Cal. 588, 595 [29 Pac. 226].)

The testimony admitted on the trial of the two actions consolidated shows that appellant was fully aware that the subtenants had rescinded the sublease because of the numerous changes made in constructing the hotel. This is further demonstrated by the fact that appellant relet the premises on August 19, 1924, to one Max Kirschbaum for the full demised term. No property under the lease ever came into respondent's possession, nor in fact into the possession of the subtenants, as both the lessee and the sublessees refused to accept the building due to the unauthorized departures from the plans agreed on and made a part of the lease.

In *Lupton* v. *Domestic Utilities Mfg. Co.*, 173 Cal. 415 [160 Pac. 241], cited by appellant, the facts are not analogous to the facts here. The opinion in that case discloses that the plaintiff had transferred title to 1,667 washers to

her husband, and that he still held title at the time of attempted rescission by plaintiff, his wife. The opinion of the court reversing the judgment shows that at the date of rescission the plaintiff had divested herself of the title to part of the property received from defendant, and that the plaintiff made no tender or offer to restore title to the property she had parted with, but in fact rested her defense for failure to return on the ground of fraud, which the court held could not be sustained.

In *Herman* v. *Haffenegger,* 54 Cal. 161, cited by appellant, while plaintiff received something of value from defendant, he made no return or offer to return what he had received. *Bailey* v. *Fox,* 78 Cal. 389 [20 Pac. 868], was an action to rescind a contract of sale of a one-third interest in a business the stock of goods of which had been depleted in the interim between the contract and attempted rescission, and *Kelley* v. *Owens,* 120 Cal. 502 [47 Pac. 369, 52 Pac. 797], cited, sustains the general rule that there can be no rescission of an executed contract upon the ground of fraudulent misrepresentation without restoration before suit by the party seeking to rescind of everything of value he had received.

Section 1691 of the Civil Code requires as a condition in rescinding that everything of value received be restored, *or an offer must be made to restore the same upon the condition that such party shall do likewise.* It appears that there has been a sufficient compliance with the italicized portion of the section of the code in both instances of rescission. The notices of rescission by the sublessees and the main lessee are sufficiently clear in respect to the offer to restore everything of value to satisfy the code provisions and the many decisions of this state.

An analysis of the facts presented reduces the issues on this appeal to the bare proposition of whether or not the outstanding record in the county recorder's office in Los Angeles County affecting the sublease was sufficient to defeat the right of plaintiff to rescind.

In *Kelley* v. *Owens, supra,* cited by appellant, the court, in discussing those cases where restoration or an offer to restore before suit is not necessary, says: "There are exceptional cases where restoration or an offer to restore before suit brought is not necessary, as, for instance, where

the thing received by the plaintiff is of no value whatever to either of the parties, or wherein plaintiff has merely received the individual promissory note of the defendant; or where the contract is absolutely void; *or where it clearly appears that defendant could not possibly have been injuriously affected by a failure to restore.*" The closing portion of this quotation, italicized, seems apropos here when considered in relation to the facts presented. While appellant insists that respondent could not by his offer succeed in effectually rescinding the contract, the appellant himself on the nineteenth day of August, while the sublease was still of record, entered into the premises and relet the same for the full demised term without prejudice or injury resulting from the fact that the sublease was of record. Section 1691 of the Civil Code provides in alternative terms either for the restoration of everything received or a clear offer to restore. In the present case we think the notice of rescission is sufficient in its offer to restore everything of value received from the defendant.

Furthermore, the rule is well recognized in this state that the appellate court will not reverse an order of the trial court granting a new trial, where there is any conflict in the evidence, unless from a review of the record furnished on appeal it clearly appears that no other judgment but one in favor of appellant could be granted. Here a verdict in favor of respondent would have had support in the evidence, and, therefore, the trial court is invested with absolute discretion in the matter of granting a new trial. (*Wendling etc. Co.* v. *Glenwood etc. Co.*, 153 Cal. 411, 416 [95 Pac. 1029].)

The order appealed from is affirmed.

Tyler, P. J., and Knight, J., concurred.